UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PATRICE WHITE,

    *Plaintiff*,

v.

DISTRICT OF COLUMBIA, *et al.*,

    *Defendants*.

Civil Action No. 22-03740 (AHA)

**<u>Memorandum Opinion and Order</u>**

    Patrice White filed this suit alleging she was fired from her job at the District of Columbia's Homeland Security and Emergency Management Agency ("HSEMA") because of her age, race, and sex. She sued the District and the agency's director, Christopher Rodriguez. At trial, the jury rendered a verdict that carefully parsed the claims and evidence. It found that White did not prove her race or sex discrimination claims against the District, or her race discrimination claim against Rodriguez. But it found that the District did discriminate against White based on her age and made findings as to back pay, front pay, and compensatory damages.

    The parties have each filed post-trial motions. The District moves for judgment as a matter of law, arguing that no reasonable jury could have found that it discriminated against White based on age, or, alternatively, for a new trial, claiming it was prejudiced by the court's time constraints. The District also moves to vacate the compensatory damages award because the Age Discrimination in Employment Act ("ADEA") does not permit such damages. The first two arguments lack merit: The jury's finding of age discrimination is clearly supported by evidence, and any time issue was caused by the District's own strategic decisions or mismanagement of time

despite repeated cautions from the court and, in any event, did not prejudice the District. The District's third point, however, is well taken: As the court previewed at the final charge conference, with the parties' agreement, any compensatory damages would be set aside if the jury returned a verdict grounded solely on the ADEA.

White moves for the court to award her retirement benefits as equitable relief on top of the jury's damages. But White presented her retirement benefits as a component of back pay and front pay throughout this case, including to the jury. The court accordingly declines to award retirement benefits as additional, equitable relief.

**I.     Background**

White is a Black woman who worked at HSEMA from 1988 until she was fired in 2021, when she was sixty-one years old and serving as chief of the agency's resilience bureau. ECF No. 51 at 32–33, 56; ECF No. 54 at 57. White filed this suit asserting age, race, and sex discrimination claims against the District under the ADEA, the 1866 Civil Rights Act, and Title VII, and race discrimination against Rodriguez under the 1866 Civil Rights Act. ECF No. 1. The defendants answered, and the parties proceeded to discovery. ECF No. 6. The court denied the defendants' motion for summary judgment and the parties proceeded to a jury trial. Minute Order (Apr. 29, 2025).

At trial, the parties presented competing theories and evidence to the jury. White made the case that, after thirty-three years of service, marked by strong performance and many promotions, she was fired because of her age, race, and sex. *See, e.g.*, ECF No. 51 at 3–13; ECF No. 56 at 102, 113. White supported her claim with testimony from another bureau chief at the agency who described his understanding from senior agency leadership that older employees would receive additional scrutiny in performance reviews. ECF No. 52 at 74–78. White also introduced testimony and handwritten notes indicating that senior agency leadership had made repeated efforts to

convince her to retire early based on her age in the lead up to her termination. ECF No. 51 at 47–49; ECF No. 52 at 73, 79; ECF No. 53 at 17–19; ECF No. 69-2 at 2.

The District presented an alternative theory and evidence to the jury, in which White was an underperformer and fired for that reason. *See, e.g.*, ECF No. 51 at 16–27. The District introduced evidence that White began receiving lower performance evaluations beginning in 2018. ECF No. 54 at 85–86, 93. The District attempted to impeach White's testimony that she was a good performer and introduced evidence from one of White's supervisors that she and her team struggled to meet certain deadlines related to one of her projects. ECF No. 52 at 5–13; ECF No. 64 at 10–11. The District also tried to rebut White's evidence of discrimination by impeaching the bureau chief who testified about the extra scrutiny given to older Black women employees and eliciting testimony that White was approached about retirement only as an effort "to let [White] know her years of service, that's it." ECF No. 52 at 82–86; ECF No. 53 at 58–59. The District also introduced evidence that the agency built a diverse leadership team, including promoting multiple Black employees and female employees. ECF No. 55 at 81–82, 94–96; ECF No. 64 at 3.

White, in turn, rebutted the District's theory and evidence through her testimony and other testimony that she was consistently a good performer. ECF No. 51 at 42–46, 52–54; ECF No. 52 at 61–63, 71–72; ECF No. 55 at 42–44. She and others testified that the lower evaluations she received beginning in 2018 were actually the result of an organizational policy change, in which managers were trained to give lower ratings as part of evaluations and that, under those standards, White was consistently rated as a "valued performer." ECF No. 51 at 51–52, 54; ECF No. 52 at 73–74; ECF No. 55 at 30–35. White also introduced competing evidence indicating that all the required tasks for her project were on track or complete, and elicited testimony that her supervisor "never was asked" and "did not make a recommendation" to terminate her. ECF No. 54 at 47; ECF

No. 53 at 83. White also introduced evidence that she had never been informed of any significant performance issues and learned of her first substandard review only after she was terminated. ECF No. 52 at 55–58; ECF No. 54 at 50–52.

After observing three days of testimony and argument, and one more day deliberating, the jury returned a carefully crafted verdict. It found White had not satisfied her burden in showing that the District discriminated against her based on race or sex, or that Rodriguez discriminated against her based on race. ECF No. 59. And it found that White did prove age discrimination, but failed to fully mitigate her lost pay. *Id.* The jury awarded $525,000 in back pay, $0 in front pay, and $75,000 in compensatory damages. *Id.*

The District moves for judgment as a matter of law and, alternatively, for a new trial and to vacate the compensatory damages. ECF No. 69. White moves the court to award her retirement benefits as equitable relief. ECF No. 70.

## II.  Discussion

The court first considers the District's motions for judgment as a matter of law, for a new trial, and to vacate the compensatory damages award, and then turns to White's motion for equitable relief.

### A. The District Is Not Entitled To Judgment As A Matter Of Law

The District argues the jury verdict should be set aside because it is entitled to judgment as a matter of law on White's age discrimination claim. ECF No. 69-1 at 8–16. Under the federal rules, the court may grant judgment as a matter of law where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). A court cannot "lightly disturb a jury verdict," so judgment as a matter of law "is appropriate only if the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men

and women could not have reached a verdict in plaintiff's favor." *Radtke v. Lifecare Mgmt. Partners*, 795 F.3d 159, 163 (D.C. Cir. 2015) (quoting *Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 165 (D.C. Cir. 2007)). The court "must resolve all reasonable inferences in plaintiffs' favor and 'cannot substitute its view for that of the jury, and can assess neither the credibility nor weight of the evidence.'" *Id.* (quoting *Scott v. District of Columbia*, 101 F.3d 748, 753 (D.C. Cir. 1996)).[1]

Here, the District argues no reasonable jury could have found that White's termination was based on age discrimination. To prevail on an ADEA age discrimination claim, White was required to show (1) she suffered an adverse employment action (2) because of her age. *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). "A plaintiff must show by a preponderance of the evidence, direct or circumstantial, 'that age was the "but-for" cause of the challenged employer decision.'" *Stephenson v. Buttigieg*, 712 F. Supp. 3d 33, 41 (D.D.C. 2024) (quoting *Steele v. Esper*, 419 F. Supp. 3d 96, 107 (D.D.C. 2019)). The District does not dispute that White suffered an adverse employment action when she was terminated. And White does not dispute that the District advanced a legitimate, nondiscriminatory reason for her termination: that she was fired based on poor performance. The critical question, then, is whether White "produced evidence sufficient for a reasonable jury to find that the employer's stated reason was not the actual reason and that the employer intentionally discriminated against [White] based on" age. *Baloch*, 550 F.3d at 1198.

---

[1] The defendants moved for judgment as a matter of law at the close of White's case and renewed their motion after the jury's verdict. ECF No. 55 at 100; *see* Fed. R. Civ. P. 50(b) ("If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.").

White's evidence was clearly sufficient for a reasonable jury to find that poor performance was a pretext and age was the actual reason for her termination. White's evidence at trial included testimony from an agency bureau chief that there had been an understanding coming from senior leadership that additional scrutiny should be given to older employees based on age. The bureau chief testified to his general understanding that "people who were older" were "less valued" and "that some of the older black female employees in [his] bureau should be given a little bit more scrutiny" in their performance reviews. ECF No. 52 at 74, 77. Asked whether he had understood an implication to scrutinize particular employees, the employee reiterated: "Again, it tended to be more of the older black females who had been with the agency for a long time." *Id.* at 76. And asked where this direction came from, the employee explained that "we knew all of the direction from—when it came to performance reviews was coming out of the executive office and the leadership team." *Id.* at 78. The employee testified that this approach was the result of a "feeling of folks in the agency of wanting to go younger." *Id.* at 77.

White also introduced evidence that senior leadership made multiple efforts to convince her to retire early given her age in the lead up to terminating her. The bureau chief testified about a conversation he overheard between senior agency leadership in which there were "discussions trying to see if [White] was interested in early retirement." *Id.* at 73. This included asking the human resources advisor if "they could convince [White] that retirement was a good option for her." *Id.* The bureau chief testified that after the human resources advisor had approached her about retirement, senior agency leadership asked him to "reiterate the point of please ask her again." *Id.* at 79. White also introduced a handwritten note that the human resources advisor prepared for this meeting, which included White's age and talking points in favor of retirement. ECF No. 51 at 49.

6

White introduced evidence that up until she received her first subpar performance review after she was terminated, she had never been informed of any significant performance issues. ECF No. 52 at 55–58; ECF No. 54 at 50–52. According to testimony at trial, this final performance review was not shared with her prior to her termination, no one had discussed the review with her, and her supervisor had not made a recommendation to terminate her. ECF No. 54 at 50–52; ECF No. 53 at 83. She also introduced evidence that the performance review was two one-hundredths below a level that would have otherwise been considered a "valued performer." ECF No. 53 at 75; ECF No. 54 at 52; ECF No. 55 at 33; *see also* ECF No. 51 at 8–9.

In addition, White introduced evidence from which the jury could have reasonably inferred that the agency gave preference to younger employees. The other bureau chief testified that after White was terminated, he was "surprised" to learn that a younger person in her thirties who had applied for a more junior position had been given White's responsibilities as bureau chief. ECF No. 52 at 80–81. White also elicited testimony from which the jury could infer that the agency favored and promoted younger employees. *See* ECF No. 52 at 76 (testifying that most employees "tended to be younger" and were less scrutinized); *see also* ECF No. 51 at 51, 55, 64.

Based on this evidence, a jury could reasonably have found that the asserted justification for White's termination—her supposedly poor performance—was pretextual and that she was fired because of her age. To be sure, the District offered a competing theory and evidence. It tried to impeach the other bureau chief who testified, arguing that his understanding that more scrutiny should be given to older, Black employees may have been misconceived. ECF No. 52 at 82–84; ECF No. 56 at 124–25. It presented testimony that the conversations about retirement were simply intended to inform White about her options, not to pressure her into retirement based on her age. ECF No. 53 at 57–59. It tried to impeach White's testimony that she had never previously received

7

or been told of a subpar performance review. ECF No. 54 at 100–03. And it tried to persuade the jury that the agency had, in fact, increased its diversity across various demographics (though, either out of necessity or strategy, focused its testimony and evidence almost exclusively on the race and sex of people hired and promoted, rather than age). ECF No. 55 at 76, 81–82; ECF No. 64 at 3. The District emphasizes several of these points in its post-trial briefing, essentially asking this court to discredit certain evidence at trial in favor of its own. *See, e.g.*, ECF No. 69-1 at 13 (arguing that the bureau chief's testimony should not have been credited because it was too speculative). But it is not this court's role to make such credibility determinations; that was for the jury to do. The jury did that in reaching its verdict—indeed, it reached a carefully crafted verdict that rejected White's claims of race and sex discrimination against the District and Rodriguez, but found age discrimination against the District. That verdict is plainly supported by evidence.[2]

---

[2]   The District suggests White failed to establish a prima facie case of age discrimination because she did not show that she was replaced by someone younger. ECF No. 69-1 at 15–16. This argument fails for several reasons. First, as described, White did introduce evidence that a younger person took over her responsibilities after she was terminated. ECF No. 52 at 79–80; ECF No. 53 at 50. Second, whether White made a prima facie case "is irrelevant." *Brown v. Howard Univ. Hosp.*, 172 F. Supp. 3d 187, 191 (D.D.C. 2016); *see Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (explaining in Title VII context that where an employee suffers an adverse action and the employer asserts a legitimate, nondiscriminatory reason, "the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case," but rather must decide whether the employee "produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee"); *Baloch*, 550 F.3d at 1197 & n.2 (same for ADEA). And third, in any event, the District failed to raise the argument when it moved for judgment as a matter of law after White rested. *See* ECF No. 55 at 108–09 (arguing in support of pre-verdict motion for judgment as a matter of law that White had provided no evidence of discriminatory intent); *see, e.g.*, *Whelan v. Abell*, 48 F.3d 1247, 1251 (D.C. Cir. 1995) (explaining that because Rule 50(b) "limits a post-verdict motion for judgment as a matter of law to a 'renewal' of the pre-verdict motion," defendants waived theory by failing to raise it in pre-verdict motion); *Beyene v. Hilton Hotels Corp.*, 958 F. Supp. 2d 247, 249 (D.D.C. 2013) ("As a post-trial Rule 50(b) motion is limited to a renewal of a Rule 50(a) motion for judgment as a matter of law, the post-trial motion must be limited to those grounds that were specifically raised in the prior Rule 50(a) motion.").

B. **The District Is Not Entitled To A New Trial**

The District moves in the alternative for a new trial, arguing that it was prejudiced by the court's time limits for trial. ECF No. 69-1 at 17–19. According to the District, it was forced to cut testimony that "likely would have altered the outcome of the trial." *Id.* at 18. The court disagrees, finding that the time allowed at trial was more than sufficient, that any time challenges were the result of the District's strategic decisions or mismanagement of time despite repeat cautions by the court, and that, in any event, the District was not prejudiced.[3]

A court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). District courts have discretion to set reasonable time limits at trial. *See, e.g.*, *Sparshott v. Feld Ent., Inc.*, 311 F.3d 425, 433 (D.C. Cir. 2002) ("The district court's decisions on how to structure time limits are reviewable only for abuse of discretion."); *Life Plus Int'l v. Brown*, 317 F.3d 799, 807 (8th Cir. 2003) ("Trial courts are permitted to impose reasonable time limits on the presentation of evidence to prevent undue delay, waste of time, or needless presentation of cumulative evidence.").

The District's challenge to the length allowed for trial is belied by its own representations, as well as the court's clear and repeated cautions to the parties to be mindful of their time. To begin with, after denying summary judgment the court asked the parties how long they would need for trial and they both expressed the view that "three days of trial would be sufficient for this case." Draft Hr'g Tr. at 9–10 (May 7, 2025); *see also id*. (District agreeing that "three days sound[s]

---

[3] The District also seeks a new trial on the basis that the verdict was contrary to the weight of the evidence and no reasonable jury could have found age discrimination. ECF No. 69-1 at 17. For the same reasons already discussed, the jury's verdict was not against the weight of the evidence. *See, e.g.*, *U.S. Indus., Inc. v. Blake Constr. Co.*, 671 F.2d 539, 549 (D.C. Cir. 1982) (district court did not abuse its discretion in denying new trial where "there was conflicting evidence" and jury credited one party's version of facts over the other's).

accurate"). After the parties submitted a deficient pretrial statement, the court reminded the parties they "should anticipate three days for this, and should plan their presentations and evidence accordingly." Draft Hr'g Tr. at 12 (June 3, 2025); *see also* ECF No. 35 at 15 (revised joint pretrial statement confirming the parties "anticipate the trial to last 3 days"). At the final pretrial conference, the court explained that it would exclude jury selection from the length they had initially proposed, and that trial would be "three days once we seat a jury." Draft Hr'g Tr. at 2 (June 16, 2025). The court also discussed the daily schedule and advised the parties they could "do the math to figure out three day trial and plan accordingly, based on that." *Id.* at 9. On the first day of trial, the court explained the schedule once more before jury selection. The court noted that the parties' estimated lengths of testimony added up to more time than they would have in front of the jury and warned them to make adjustments:

> You are going to have to account for that in the evidence you plan to put forward and go in the other direction just so there is enough time to get this trial done. I'm anticipating three days of presentation of evidence. I'm not going to include the voir dire time in that. If we're ready to start opening statements or start my preliminary instructions after [l]unch today, then I want the trial to wrap up and [be] submitted to the jury at lunch time on Thursday.

Draft Hr'g Tr. at 11–12 (July 7, 2025). Consistent with the court's prediction, jury selection was completed, and preliminary instructions and opening statements began after lunch that day. And throughout trial, the court regularly reminded the parties to be mindful of time, leaving them to make their own strategic decisions on how best to use it. ECF No. 51 at 72; ECF No. 54 at 12–18, 115; ECF No. 52 at 128; ECF No. 55 at 10–12; ECF No. 56 at 4

The court finds that, to the extent the District encountered challenges based on the time constraints, it was due to its own tactical decisions or mismanagement of time at trial. The court made clear well in advance of trial that the parties would have three days of trial once a jury was seated and that they would need to plan their cases accordingly. *See Ross v. Parrot's Landing, Inc.*,

10

No. 21-1774, 2022 WL 7367263, at *3 (6th Cir. Oct. 13, 2022) (noting that courts have considered "whether the district court gave notice of the limits and ample time for the parties to craft their case, gave the parties an opportunity to object to the limits at the outset and as the case proceeded, and grounded any time limits in the realities of the case"). Despite that and additional reminders during trial, the District opted not to streamline its presentation even when it had opportunities to do so. For example, the District played extensive *de bene esse* video testimony for the jury. *See* ECF No. 64. Much of that video testimony was cumulative and involved questioning at a winding, deposition-like pace rather than the type of questioning fit to be played at trial. Counsel also opted to play the testimony to the jury at regular speed and to present large portions of the testimony rather than substantially edit it. In contrast, plaintiff's counsel opted to read relevant excerpts of *de bene esse* testimony to the jury in an effort to streamline the presentation. ECF No. 55 at 9–11; ECF No. 56 at 7. To be sure, the court gave the District great leeway in how to best present its case to the jury within these time limits, and the District cannot now complain after not using its time as wisely as it could have.

That any timing issue arises from the District's own strategic decisions or miscalculations is evident from the record. As the District acknowledges, it did not raise any issue about the trial length with the court until the morning of the third day. *See* ECF No. 69-1 at 17; ECF No. 76 at 9. At that time, counsel for the District attempted to backtrack on an agreement it had made with opposing counsel the prior afternoon, in which White would be given more time to present her case, and instead asked the court to order White to rest her case immediately so defendants could proceed with their case. ECF No. 55 at 3–4; *see* ECF No. 52 at 127–28 (not objecting to allowing the plaintiff to present additional designations). The court explained that the District's sudden shift, just as White was set to continue with her case that morning, was unacceptable—the court had

given the District multiple opportunities to confer with White's counsel and to propose a clear division in time, and it had failed to do so. ECF No. 55 at 11–12. While the District now seeks a new trial because White "consumed more than half" of the time allotted for trial, it acknowledged at trial that any such imbalance was caused by its own trial conduct. *Id*. at 13 (acknowledging "it's on me" and "I should have done a better job"); *see* ECF No. 69-1 at 17. The court nonetheless adopted a compromise in which White would limit her case to an additional 45 minutes and the District could then begin its case. ECF No. 55 at 12–13. The court also extended the third trial day and allowed the fourth trial day to proceed past the lunch hour, which led the parties to have roughly equal time to present their cases despite the District's own accountability for any shortage it would have in time. Even if the court were to overlook the District's accountability, this case bears no resemblance to cases where a new trial has been granted. *See Sparshott*, 311 F.3d at 434 (finding abuse of discretion based on "wide disparity in time limits," where one party "received a fraction of the time given to [the other party]").

      The court finds the District was not prejudiced by the trial length. *See id.* at 433 (explaining that "a party arguing that time limits were unfair must also show that he was prejudiced thereby"). To begin with, as explained, the parties affirmatively proposed a three-day trial upon the court's denial of summary judgment. Having invited that length, it cannot now claim prejudice. Moreover, while the District claims it was "forced" to cut video testimony of an employee, Carrie Speranza, that "presented novel facts that very well may have changed the outcome of the case," that is simply not credible. ECF No. 69-1 at 18. The District was not forced to cut anything; in fact, as of the third and fourth days of trial, counsel indicated they were planning to cut down their video depositions so they could play that of Speranza and another witness. ECF No. 53 at 121; ECF No. 56 at 6. They instead opted to play lengthy and largely unedited video from another witness. *See*

12

ECF No. 64. The District's argument that video testimony from Speranza would have changed the result at trial by undermining one of White's witnesses is not credible, and is belied by the fact that the District made the strategic decision to forgo her testimony in favor of other video, some of which was less than compelling.[4]

### C. The Compensatory Damages Award Must Be Vacated

The District asks the court to vacate the jury's award of $75,000 in compensatory damages. ECF No. 69-1 at 19–20. This argument is well founded. In reviewing the verdict form before the case was submitted to the jury, White acknowledged she would not be entitled to any compensatory damages found by the jury if she prevailed on only her ADEA claim. ECF No. 53 at 94–97. White therefore concedes that the compensatory damages award must be vacated. ECF No. 73 at 1 n.2. The court accordingly vacates the compensatory damages award. *See, e.g.*, *Liu v. Georgetown Univ.*, No. 22-cv-157, 2024 WL 4362128, at *12 (D.D.C. Sept. 30, 2024) (collecting cases and explaining that "the ADEA does not provide for compensatory or punitive damages as remedies").

### D. White Is Not Entitled To Equitable Relief

Following the jury's verdict of age discrimination, White moves the court for equitable relief that would require the District to provide her retirement benefits. ECF No. 70. According to White, she would have vested in her retirement benefits on her sixty-second birthday, just five weeks after her termination went into effect. ECF No. 70-1 at 2. While White's motion does not precisely define the retirement benefits in question, the District asserts—and White does not

---

[4] While the District's complaint about time is unpersuasive given its litigation decisions and the court's many cautions, and the jury found against the District on one claim, none of the court's analysis should be read as a criticism of District counsel's performance at trial. Both counsel for the District conducted themselves with professionalism, dignity, and candor throughout the trial. And the court was, on many occasions, impressed with their performance. Sometimes, when you put on the best case you can with the evidence you have, the jury still credits the other side and all you are left with is a complaint about trial time.

dispute—that there is only one benefit White would have been entitled to had she turned sixty-two before being fired: the opportunity to enroll in a District-provided healthcare plan by paying premiums at a rate partially subsidized by the District. ECF No. 72 at 2.

The court may award equitable relief under the ADEA. *See* 29 U.S.C. § 626(b) (stating that "the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of" the ADEA). But here, the court finds that White is not entitled to the relief requested. As the District points out, White made the value of her healthcare benefits part of her case to the jury in arguing for an award of back pay and front pay. One of White's experts opined that the value of her lost benefits from the date of termination to her projected end date was roughly $113,000. ECF No. 52 at 49. Another expert's demonstrative calculating economic losses included "employer provided contributions to . . . health insurance." ECF No. 74 at 12. And counsel for White highlighted in closing that the timing of her termination had deprived her of retirement benefits. ECF No. 56 at 114. Indeed, that is consistent with the framing in White's complaint. *See* ECF No. 1 ¶ 84(c) (requesting "all back pay, including but not limited to wages, benefits, and retirement benefits"). Given that the jury was made aware of the benefits and was asked to include them in any award, the court declines to grant White's request for retirement benefits. *See Sharkey v. Lasmo (AUL Ltd.)*, 214 F.3d 371, 375 (2d Cir. 2000) (explaining that if jury's award included value of lost pension benefits, then plaintiff would have already been compensated and "is not entitled to equitable relief that would duplicate the relief awarded by the jury"); *see also Lewis v. District of Columbia*, 791 F. Supp. 2d 136, 142–43 (D.D.C. 2011) (noting

14

that award of back pay may include pay increases, "lost fringe benefits, such as contributions to a company savings plan, sick leave pay, compensation for medical expenses and life insurance").[5]

### III. Conclusion

For these reasons, the District's omnibus renewed motion for judgment as a matter of law, or, alternatively, for a new trial, and motion to vacate compensatory damages award, ECF No. 69, is granted in part and denied in part. The court denies the District's request for judgment as a matter of law or a new trial, and grants the District's request to vacate the compensatory damages award. White's motion for retirement benefits as equitable relief, ECF No. 70, is denied. By January 15, 2026, the parties shall meet, confer, and submit a proposed final judgment.

_____
AMIR H. ALI
United States District Judge

Date:   January 8, 2026

---

[5] The court accordingly need not resolve the District's other arguments that the motion should be denied because White failed to present any evidence as to whether she would have elected coverage under a District health plan, which plan she would have chosen, and what the premiums would have been. ECF No. 72 at 6–7.